UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CHANNEL PARTNERS CAPITAL, LLC,  Plaintiff,  v.  99 FREIGHT, INC, et al.,  Defendants. | Case No. 2:23-CV-292-CCB-AZ |

### OPINION AND ORDER

Before the Court is Plaintiff Channel Partners Capital, LLC's ("Channel Partners") Motion for Default Judgment as to Defendants 99 Freight, Inc. ("99 Freight"), and Stefan Milic (ECF 18). 99 Freight and Mr. Milic have not responded. Channel Partners' motion is granted for the following reasons.

### I.   RELEVANT BACKGROUND

This case has been pending since August 29, 2023. In its complaint, Channel Partners alleges that it agreed to loan 99 Freight $200,000 on November 18, 2022 (ECF 1). Mr. Milic personally guaranteed that loan. (*Id.*) By the terms of the loan contract, 99 Freight was to make 52 consecutive weekly payments on the loan. (*Id.*) If 99 Freight failed to comply with the payment requirements of the contract, it would be in default, and Channel Partners would be entitled to demand all sums due under the contract, along with attorneys' fees and costs. (ECF 1-1 ¶ 5). In the event of 99 Freight's default, Mr. Milic, the guarantor of the loan, would be required to pay all obligations remaining under the contract. (*Id.* at 6).

On January 30, 2023, 99 Freight failed to make its scheduled payments. (ECF 1). This left a balance due of $197,965.45. (ECF 1-2). Channel Partners sent a demand letter seeking payment of the loan balance on August 9, 2023, (ECF 1-2), and filed this lawsuit 20 days later, (ECF 1).

Neither 99 Freight nor Mr. Milic responded to Channel Partner's complaint. On December 27, 2023, the Clerk entered default against both defendants. (ECF 6; ECF 7). On February 15, 2024, this case was stayed as to Mr. Milic after Channel Partners informed the Court that Mr. Milic had filed for Chapter 7 bankruptcy. (ECF 8; ECF 9). Channel Partners moved for default judgment against all defendants on April 9, 2024, (ECF 12), but the Court denied the motion without prejudice because of the stay, (ECF 15). Channel Partners moved to dissolve the stay on January 29, 2025, (ECF 16), after the conclusion of bankruptcy proceedings, and the Court granted that request on February 11, 2025, (ECF 17). Channel Partners then filed this second Motion for Default Judgment on March 20, 2025. (ECF 18).

II.   **ANALYSIS**

Federal Rule of Civil Procedure 55 provides that when a party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once the clerk has entered default, the "well-pled allegations of the complaint relating to liability are taken as true." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the

2

amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

Entry of default judgment then falls within the sound discretion of the district court. *See Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 252 (7th Cir. 1990). Factors the Court may consider when determining whether to enter default judgment include "whether there is a material issue of fact, whether the default is largely technical, whether the plaintiffs were substantially prejudiced, and how harsh an effect a default judgment might have." *Wolf Lake Terminals, Inc. v. Mut Marine Ins.*, 433 F. Supp. 2d 933, 941 (N.D. Ind. 2005).

Here, both defendants were served by Channel Partners. (ECF 18-1; ECF 18-2). Despite this, neither defendant answered the complaint, nor even appeared in the case. Consequently, the clerk entered default against both. (ECF 6; ECF 7). Even after entry of default, neither defendant has made any attempt to defend the case. Thus, default judgment is appropriate if this Court has jurisdiction and the "uncontested factual allegations in the complaint establish the requisite elements for liability" on Channel Partners' claim. *WaterFurnace Int'l, Inc. v. B & S Sheet Metal Mech., Inc.*, 2015 WL 6510446, at *2 (N.D. Ind. Oct. 28, 2015).

   a. **Jurisdiction**

This Court may exercise its diversity jurisdiction when the parties to an action are of diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. In its complaint, Channel Partners alleges that it is a Delaware limited liability corporation with members who are citizens of Delaware and New York. It alleges that

99 Freight is an Indiana corporation and Mr. Milic is a citizen and resident of Illinois. As neither Mr. Milic nor 99 Freight have challenged these allegations, the Court takes them to be true. *See* Fed. R. Civ. P. 8(b)(6). Channel Partners seeks damages of $197,965.45 in addition to prejudgment interest and attorneys' fees and costs. (ECF 1 ¶¶ 19–25). As the parties are completely diverse, and the amount in controversy exceeds $75,000, this Court has diversity jurisdiction over this matter.

Federal personal jurisdiction over a party "is proper whenever the [party] would be amenable to suit under the laws of the state in which the federal court sits . . . , subject always to . . . constitutional due process limitations . . . ." *KM Enterp., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 723 (7th Cir. 2013). Thus, when sitting in diversity, this Court may exercise personal jurisdiction over a party if an Indiana court would have personal jurisdiction over that party. 99 Freight, an Indiana corporation with its principal place of business in Hammond, Indiana, clearly falls within the personal jurisdiction of Indiana courts. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (finding that, "[w]ith respect to a corporation, the place of incorporation and principal place of business" serve as bases for general jurisdiction over the corporation). Mr. Milic, though, is a citizen and resident of Illinois. Indiana law authorizes personal jurisdiction over a nonresident party under several conditions, three of which are relevant here:

> Any person or organization that is a nonresident of this state . . . submits to the jurisdictions of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent:
>
>   (1) doing any business in this state;

4

> . . .
>
> (3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state; [or]
>
> . . .
>
> (6) contracting to insure or act as surety for or on behalf of any person, property or risk located within this state at the time the contract was made . . . .

Ind. R. Tr. P. 4.4(A)(1), (3), (6). Channel Partners alleges that Mr. Milic, as president of 99 Freight, conducted business in Indiana, "derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered from 99 Freight," and "contracted to insure or act as surety for or on behalf of property located within" Indiana at the time the contract was made. (ECF 1 ¶ 5). These allegations are supported by the loan contract and the affidavit of Shawna Thooft, an employee of Channel Partners who administers the 99 Freight account. (ECF 1-1; ECF 18-7). Because Indiana law grants Indiana courts personal jurisdiction over Mr. Milic on these facts, this Court also has personal jurisdiction over Mr. Milic. *See Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1216 (7th Cir. 1990) ("A federal court sitting in a diversity case has personal jurisdiction over a non-consenting, nonresident defendant if a court of the state in which the district court sits would have personal jurisdiction.").

    b. **Liability**

With jurisdiction confirmed, the Court must determine whether the uncontested factual allegations made in the complaint are sufficient to establish liability. Channel Partners and 99 Freight contracted for Channel Partners to lend 99 Freight $200,000.

5

(ECF 1-1 at 1.) 99 Freight agreed to repay that sum with interest over the course of 52 monthly payments. (*Id.*) Mr. Milic personally guaranteed the loan. (*Id.* at 6). The loan contract provides that, among other things, missing two weekly payments or breaching any other contractual conditions constitutes default. (ECF 1-1 ¶ 5). In the event of default, Channel Partners may "declare all Loan Payments along with any other amount due hereunder, immediately due and payable less five percent (5%) of the remaining unpaid payments as determined by the Lender's records." (ECF 1-1 ¶ 5). Any "obligations and liabilities accelerated" because of default "shall bear interest at the lower of eighteen percent (18%) per annum or the maximum rate allowed by applicable law." (*Id.* ¶ 5). Furthermore, 99 Freight must "pay Lender all reasonable attorneys' fees and all court costs and other expenses incurred in collecting upon amounts due under this Loan Agreement or otherwise enforcing the terms of this Loan Agreement." (*Id.* ¶ 2). As guarantor, Mr. Milic agreed to "immediately pay in accordance with the default provisions of the Loan Agreement all obligations due thereunder," including "attorneys' fees and costs" stemming from enforcement of the contract against 99 Freight or Mr. Milic, should 99 Freight default. (*Id.* at 6).

99 Freight defaulted on January 30, 2023, and made no further payments. (ECF 18-7 ¶ 11). Mr. Milic failed to pay 99 Freight's obligations. (*Id.* ¶ 12). So Channel Partners sent a demand letter on August 9, 2023, threatening litigation if the full balance of the loan was not paid by August 21, 2023. (ECF 1-2). When no payment was made, Channel Partners sued 99 Freight for breach of contract and Mr. Milic for breach of guaranty. (ECF 1 at 4–5). Both 99 Freight and Mr. Milic were served with the complaint,

6

but neither responded. (ECF 18-1; ECF 18-2). The Clerk entered default against both defendants. (ECF 7; ECF 8). Channel Partners has alleged sufficient facts, supported by Ms. Thooft's affidavit and the contract itself, to "establish the requisite elements for liability" as to 99 Freight on the breach-of-contract claim and as to Mr. Milic on the breach-of-guaranty claim. See *WaterFurnace Int'l*, 2015 WL 6510446, at *2. And because the Clerk has entered default against both defendants, the "well-pled allegations of the complaint relating to liability are taken as true." *Wehrs*, 688 F.3d at 892. The record does not suggest that this default was "largely technical," nor that there is any "material issue of fact" in dispute. See *Wolf Lake*, 433 F. Supp. 2d at 941. And though default judgment is certainly an unwelcome outcome for the defendants, such a result cannot be considered unduly harsh or "substantially prejudic[ial]" when the defendants were served with the complaint over two years ago and have yet to defend the case. (*See* ECF 3; ECF 4). Accordingly, the Court finds that default judgment is warranted against 99 Freight and Mr. Milic.

    c. **Damages**

This leaves the issue of damages. The remaining balance due at time of default was $208.384.68. (ECF 18-7 ¶ 15). Deducting the contractual five percent discount reduces the balance Channel Partners seeks to $197,965.45. (*Id.*) Channel Partners' counsel has also submitted an affidavit in support of his costs and fees, fixing his fees at $5,090.00 and his costs at $1,087.95 for a total of $6,177.95. (ECF 18-8). Because the loan balance of $197,965.45 is supported by Ms. Thooft's affidavit, and Channel Partners'

7

legal fees and costs of $6,177.95 are supported by counsel's affidavit, the Court finds that both amounts may be properly awarded as part of the default judgment.

Channel Partners also seeks prejudgment interest of eighteen percent per year. Ms. Thooft's declaration calculates the amount of prejudgment interest accrued between contractual default on January 30, 2023, and March 25, 2024, as $41,000.40. (ECF 18-7 at 3). Channel Partners is directed to submit an updated accounting of the total award it seeks, including an updated calculation of prejudgment interest, within 14 days. At that time, Channel Partners may request that the Court enter final judgment against both defendants and award damages, prejudgment interest, and attorneys' costs and fees.

### III. CONCLUSION

Channel Partners' Motion for Default Judgment as to Defendants 99 Freight, Inc., and Stefan Milic (ECF 18) is **GRANTED**. Channel Partners is **DIRECTED** to file an updated accounting of the total award it seeks, including an updated calculation of prejudgment interest, by no later than March 13, 2026. Channel Partners is further **DIRECTED** to file a proposed order granting that request by the same date.

SO ORDERED on February 27, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT